EYLeetrialmemo

LEONARDO M. RAPADAS
United States Attorney
KARON V. JOHNSON
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CRIMINAL CASE NO.  08-00004 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **UNITED STATES TRIAL** |
| ) | **MEMORANDUM** |
| EUN YOUNG LEE, ) | |
|     aka Eun Young Cho, ) | |
|     aka Ina Lee, ) | |
| MARCELINO J. LASERNA, ) | |
| JOHN W.C. DUENAS, ) | |
| MARY C. GARCIA, ) | |
| JOSEPH PANGELINAN, ) | |
| FRANCISCO SN KAWAMOTO, and ) | |
| MARGARET B. UNTALAN, ) | |
| ) | |
| Defendants. ) | |
|                                                                    ) | |

The government is submitting this initial trial memorandum to address legal points which are obviously going to be relevant at trial. Further memoranda may follow as necessary.

<u>INSTRUCTIONS FOR A VIOLATION OF 18 U.S.C. 1028(a)(1)</u>

The defendants are charged with aiding and abetting Eun Young Lee to unlawfully produce 55 Guam driver's licenses. This indictment is predicated on the following Guam laws, Motor Vehicle Division rules, and Guam Attorney General's opinion, which the government will ask the court to notice judicially. The exhibits numbers cited below are for purposes of this memorandum.

1) 11 Guam Code Annotated § 1103 provides makes the Department of Revenue and Taxation responsible for the enforcement of the tax laws of Guam, the collection of revenue, and for licensing and registration as well as allied and connected enforcement functions (Exhibit 1).

2) 11 Guam Code Annotated § 1104 provides that the Department shall be responsible for Chapter 16, related to vehicles and vehicle licensing (Exhibit 2).

3) 11 Guam Code Annotated § 1106 allows the Director of the Department to delegate authority for the performance of any of his powers or duties to any office or employee under this direction and supervision (Exhibit 3).

4) 11 Guam Code Annotated § 1107 gives the Director of the Department the power to formulate and adopt rules necessary or proper for the internal administration of the Department (Exhibit 4).

5) 16 Guam Code Annotated § 3101(e) lists certain information which must be included in any application for a driver's license, and provides that the license application be on a form provided by the Department, and verified under oath. Section 3101(e)(12) allows the Director to require any other information necessary to determine whether an applicant should receive a license. Section 3101(j)(4) allows the director to disapprove an application if he determines the applicant has knowingly made a false statement, or knowingly concealed a material fact or otherwise committed any fraud in respect to the application (Exhibit 5).

6) 16 Guam Code Annotated § 3109(f) makes it unlawful for a person to use a false or fictitious name in any application for a license or permit, or to knowingly make a false statement or knowingly conceal a material fact or otherwise commit a fraud in any such application (Exhibit 6).

7) Guam Attorney General's Opinion DRT 89-1449 advised the Department that it was lawful to require applicants to provide their social security numbers, as long as the application form included the statement that this information was necessary to process the application (Exhibit 7).

8) By memorandum dated June 2, 1997, the Director ordered that a social security number would be the only form of identification recognized when processing applicants for a Guam driver's license. This directive was mandatory, and provided that failure to comply with it would result in disciplinary action (Exhibit 8).

9) By memorandum dated February 5, 1999, the Director indicated that applicants for licenses who did not have a social security number would be authorized to use an individual taxpayer identification number (ITIN) in its stead (Exhibit 9).

10) By memorandum dated October 31, 2002, the Administrator of the Motor Vehicle Division (MVD) reminded examiners that a license applicant was required to have either a valid ITIN or a Social Security Card. If the applicant could not produce either of those documents, he was required to have a written verification from the Social Security Administration. The memorandum emphasized the importance of complying with this directive (Exhibit 10).

11) By memorandum dated July 16, 2004, the Director instructed the MVD examiners that, in lieu of a ITIN or SS card, applicants could obtain a Guam driver's license on their passport alone, but only if they first secured denial letters from both the IRS and the Social Security Administration, to the effect they were not able to secure an ITIN or an SS number. By memorandum dated July 30, 2004, this policy was expanded to provide that within 90 days of the passport license expiring, the applicant would have to go through the entire ITIN-SS denial routine again (Exhibit 11).

The evidence will show that until December 17, 2003, the Internal Revenue Service would issue ITINs to applicants merely upon submission of a W-7 application form. The notification of assignment of a number was mailed to the applicant on a form which had a card, similar to the SS card, at the bottom right hand of the form. The print on this "card" was in green ink; there was a place for the applicant to sign the card (Exhibit 12).

On December 17, 2003, the IRS changed its ITIN issuance policy to ensure its use solely for tax purposes. Thereafter, the IRS would not issue an ITIN unless the W-7 application was

accompanied by the filing of a 1040 income tax return. As well, IRS changed the format of the notification letter by adding a security feature: if anyone attempted to copy the letter, "void" would appear on the copy, as illustrated by Exhibit 13. Thus, the new ITIN letters issued as of January, 2004 were impossible to reproduce by whiting-out the data on an original letter and copying it.

The University of Guam was under contract to MVD to monitor the written tests; Lee had been hired as a Korean language interpreter for this program. The evidence will show that in 2003, Lee was securing ITINs for Korean nationals, and using the original ITIN letter as support for a Guam driver's license. This scheme necessarily terminated, however, after the IRS stopped issuing ITINs to anyone who simply submitted a W-7 form. By the end of 2003, Lee had two choices: give up a lucrative sideline which produced a tidy sum of tax-free cash, or persuade her friends at the MVD to accept her clients' applications without the required supporting documents. After a hiatus of several weeks, Lee chose the latter course. In late February, 2004, Lee began bringing Koreans to the MVD who had no social security or ITIN. She would fill out their applications listing a fraudulent ITIN, which her friends at MVD would accept without question. To date, the government has identified 53 illegal aliens, in addition to two government informers, for whom Lee procured Guam driver's licenses, aided and abetted by six Guam motor vehicle examiners, as named above. A summary of the government's data is attached hereto as Exhibit 14.[1]

At times, Lee would submit with the application a fuzzy black and white copy of a fraudulent ITIN letter, which she had created by using a 2003 original ITIN letter, whiting-out the real recipient's name and information, typing in that of the applicant, then photocopying it.

---

[1] This summary chart reflects the name and Guam driver's license number, the ITIN used (with required portions deleted for genuine ITINs), pertinent address information on each application, the date, time and examiner who accepted the application and entered it into the MVD computer, the date of the written test, and the date the license (other than a beginner's permit) was issued.

-4-

On other occasions the MVD examiners accepted the license applications without any supporting documents.

The MVD official procedure was that, at the time a foreign national submitted an application for a driver's license, he was required to present an original ITIN document, or an original SS card. The examiners had no authority to accept an application which was not supported by such an original document. If an examiner accepted the application, it was entered into the MVD computer bank, and a written examination time was set. Examinations in foreign languages were contracted to the University of Guam, which in turn had contracted with Eun Young Lee (Ina Lee) to administer the Korean examinations. If the applicant passed the exam, MVD would be notified. After that, all the applicant had to do was come back to MVD, submit a translation of his Korean driver's license (if applicable), have his picture taken, pay his $5, and receive his laminated Guam driver's license.

The gravamen of these charges is that Ina Lee and her confederate motor vehicle examiners knowingly and without lawful authority produced Guam driver's licenses by deliberately issuing licenses to people whom they knew were unqualified to receive them. The government will prove that these examiners knew that they had no authority to accept an application or issue a license unless they confirmed the applicant's SS number or ITIN through an original supporting document. Although they required strict compliance with MVD rules for every other applicant, the defendants made an exception for Lee's clients.

The history of 18 U.S.C. § 1028(a)(1) is at H.R. REP. 97-802, 1982 U.S.C.C.A.N. 3519, a copy of which is attached hereto as Exhibit 15. This statute was in response to a recognition that document fraud, in particular identification fraud, was costing the United States billions of dollars per year, and was widely practiced by criminal gangs in the furtherance of their illegal conduct. The House Report contains a section-by-section analysis of the new legislation; § 1028(a)(1) begins at p. 3527.

Identification documents are defined as documents issued under the authority of a

-5-

Case 1:08-cr-00004   Document 111   Filed 05/06/2008   Page 5 of 15

government, which includes the federal government, state and local governments, as well as foreign governments. Driver's licenses are specifically included under § 1028(b)(1)(A)(ii).

"Production" includes the terms alter, authenticate or assemble, but is not limited to those terms. It also includes making, manufacturing, issuing and publishing.

> "A government employee whose duty is to simply issue identification documents, and does not manufacture or assemble the documents, is, by issuing the document, authenticating it. If such an employee were to authenticate such documents without lawful authority, it would constitute an offense under this subsection." Id.

The statute requires "(1) an awareness of the nature of one's conduct; and (2) an awareness of or a firm belief in the existence of a relevant circumstance ..." Id. at 3528. The Report emphasizes that Congress intended to block the "willful blindness" defense. The knowing state of mind may be satisfied by proof that the "defendant was aware that he was without lawful authority to produce such a document," or that he was "aware of a high probability of the existence" of the circumstance which made his conduct unlawful.

This section was intended specifically to address situations where government employees were knowingly issuing identification documents which did not meet the criteria of their agency.

> "The term 'unlawful authority' refers to the authority to manufacture, prepare, or issue identification documents by statute or regulation, or by contract pursuant to such authority. A person, such as a clerk, who is authorized to issue identification documents upon the satisfaction of certain requirements, could be acting without lawful authority if he issued an identification document knowing that the requirements had not been fulfilled." Id. at 3528.

A variety of cases illustrate how this statute is applied. In United States v. Rashwan, 328 F.3d 160 (4th Cir. 2003), the defendant, a resident of New Jersey, could not get a New Jersey driver's license because he was an illegal overstay and did not have a ITIN or a SS number. He paid a man to take him to Virginia, where he secured identification, a learner's permit, and ultimately a driver's license by listing a phoney address and falsely certifying that he was a Virginia resident. He was charged and convicted for a violation of § 1028(a)(1), among other offenses. On appeal, he challenged the applicability of § 1028(a)(1) to the facts of the case,

-6-

arguing that he did not "produce" the identification because he had not physically manufactured it himself. The court rejected this reasoning, holding he aided and abetted in the production of the identification pursuant to 18 U.S.C. § 2(b) by causing the act to be done. By providing the Virginia DMV with false information, with the specific intent that it issue him a license, he was held to have "produced" the identification.

United States v. Kuku, 129 F.3d 1435 (11th Cir. 1997) is virtually identical to the facts here. Kuku was a service representative for the Social Security Administration. Her duties included accepting social security applications, checking to ensure the required documentation was attached, entering applicant information into the SSA computer system, and processing changes in the SSA records as necessary. The SSA guidelines required each application to be accompanied by documentation establishing the applicant's age, citizenship, and that he was lawfully admitted to the U.S. The same guidelines required Kuku to conduct a personal interview with applicant. Instead, she accepted bribes to issue social security cards based upon applications without the required documentation, and for which she failed to conduct personal interviews. The case turned on which Guidelines applied for sentencing, with the court ultimately determining that 2L2.1 was the guideline most suited to this sort of conduct.

United States v. Johnson, not reported in F.Supp.2d, 2001 WL 1313789, is another illustration of the kind of conduct covered by § 1028(a)(1). In Illinois, a person arrested for DUI had his license suspended. The MVD would not reinstate the license until it had received confirmation from the Illinois Secretary of State that the charge had been vacated or dismissed. Johnson paid a clerk in the Secretary of State's office to fabricate state court certifications that the DUI convictions or other violations had been set aside, whereupon the MVD would reissue the license. Johnson moved to dismiss the indictment, arguing that 1028 only criminalized the production of documents which bore false information. In this case, the driver's licenses had been reissued based upon false certifications from the Secretary of State, but the information on them was entirely legitimate. The district court denied the motion, specifically citing the House

-7-

Report, noting that this section "focuses not on the nature of the identifying information, but, rather, on the failure to follow requirements for its issuance."

In sum, the defendants are charged with issuing Guam driver's licenses knowing that they were without lawful authority to do so, i.e., knowing that the applicants had not met the requirement of a valid ITIN or SS number.

The government proposes the following jury instruction for a violation of Fraud in connection with an identification document, in violation of 18 U.S.C. § 1028(a)(1):

> **The defendant is charged in Count ___ of the indictment with Fraud in connection with an identification document, in violation of Title 18, United States Code, § 1028(a)(1). In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:**
>
> **First, the defendant knowingly produced an identification document which was a driver's license;**
>
> **Second, the defendant knew or had reason to believe beyond a reasonable doubt that the driver's license was produced without lawful authority;**
>
> **Third, the production, transfer, possession or use of the driver's license was in or affected interstate or foreign commerce.**
>
> **A government employee whose duty is to issue identification documents, is, by issuing the document, authenticating it.**
>
> **The term "produce" includes "authenticate."**
>
> **It is an offense under this section for a government employee to authenticate an official document without lawful authority.**
>
> **A government agency employee acts without lawful authority if he or she fails to follow agency requirements or fails to comply with agency rules or procedures.**

## II. STATEMENTS OF CO-CONSPIRATORS

The government will be calling as witnesses several of the Korean nationals who unlawfully secured licenses. During the course of their testimony they may testify to statements made to them by Ina Lee or by other individuals who were recruiting clients for Lee. Such statements are not hearsay. Federal Rule of Evidence 801(d)(2) provides in pertinent part:

-8-

> (d) Statements which are not hearsay. A statement is not hearsay if–...
>> (2) Admission by part-opponent. The statement is offered against
>>> a party and is ... (E) a statement by a coconspirator of a party
>>>> during the course and in furtherance of the conspiracy.

The rule goes on to provide, however, that the statements alone are not sufficient to establish the conspiracy/agency relationship or the existence of the conspiracy.

Before statements of coconspirators may be considered by the jury, the court must determine that there is sufficient evidence to establish, by a preponderance of the evidence, that a conspiracy existed and that the defendant was involved in it. Bourjaily v. United States, 483 U.S. 171 (1987). United States v. Layton, 720 F.2d 548, 555 (9th Cir. 1983) (*Layton I*), held that

> "Before admitting a statement of a co-conspirator into evidence against a defendant, the court must have independent evidence of the conspiracy and of the defendant's connection to it, and must conclude that the statement was made both during and in furtherance of the conspiracy."

To have been made in furtherance of the conspiracy, the statements must further the common objective of the conspiracy, or set in motion transactions that are an "integral part" of the conspiracy. Id. at 556.

For the government to prove the existence of a conspiracy, it must "establish a prima facie case through the introduction of substantial independent evidence other than the contested hearsay." United States v. Perez, 658 F.2d 654, 658 (9th Cir. 1981). Once a conspiracy has been proven, only "slight evidence" is necessary to connect the defendant with the conspiracy. Id., citing United States v. Weaver, 594 F.2d 1272, 1274 (9th Cir. 1979).

Typically, the government's order of proof, if it is to proceed logically, will include statements of co-conspirators as well as other independent evidence. The courts allow for such an arrangement. "There is no immutable order of proof. The contested statements may be admitted conditionally as long as the court in the proper exercise of its discretion determines that a motion to strike could cure defects resulting from insufficient proof of the necessary

-9-

Case 1:08-cr-00004    Document 111    Filed 05/06/2008    Page 9 of 15

preliminary facts." Perez, 658 F.2d 658.

### III. OTHER UNCHARGED CONDUCT

During the course of the trial, the government may introduce testimony concerning the illegal issuance of other licenses, which are not part of the charged conduct. This information has come to light because of the on-going interviews of persons pleading guilty, and from related investigations. These uncharged illegal licenses were issued by these defendants between 2004-05, in the same manner as those presently pending trial. Testimony concerning these licenses is not subject to FRE 404(b) as "other bad acts." "Evidence should not be treated as 'other crimes' evidence when 'the evidence concerning the [other] act and the evidence concerning the crime charged are inextricably intertwined.'" United States v. Soliman, 813 F.2d 277, 279 (9th Cir. 1987). There, the defendant was charged with mail fraud for a unlawfully collecting insurance proceeds. The indictment charged only three counts of mail fraud, but the government was allowed to introduced a summary chart describing 102 other fraudulent insurance claims which the defendant had submitted. On appeal, the court held this chart was not 404(b) evidence at all. The government had to prove the existence of a scheme of mail fraud activity, and these additional 102 fraudulent claims proved the existence of such a scheme, though they were not specifically charged.

United States v. William, 291 F.3d 1180 (9th Cir. 2002), concerned a prosecution for Mann Act violations. In addition to testimony concerning defendant's interstate transportation of minors for purposes of prostitution, the court allowed testimony concerning defendant's repetitive beating of the girls working for him. On appeal, the court held such evidence was not 404(b), but rather an inextricable part of the charges, because it was the means by which the defendant maintained control over the minors. The court cited United States v. Vizcarra-Martinez, 66 F.3d 1006, 1012-13 (9th Cir. 1995), that evidence is inextricably intertwined, and hence not covered by 404(b), if it "constitutes a part of the transaction that serves as the basis for the criminal charge" or "was necessary to ... permit the prosecutor to offer a coherent and

-10-

comprehensible story regarding the commission of the crime."

Here, the government anticipates additional evidence that over the same two-year period, the defendants unlawfully produced more than 55 Guam driver's licenses by issuing them to individuals they knew did not meet MVD's requirements. The *modus operandi* was identical in each case. As such, all the driver's licenses which were illegally issued are relevant and constitute evidence which is inextricably part of the charged conduct.

Even if considered to be evidence of other bad acts, these new licenses would still be admissible under 404(b) to prove motive and intent. Such "prior bad acts" are admissible if they go to prove an element of the crime charged. Thus, for example, in United States v. Rrapi, 175 F.3d 742 (9th Cir. 1999), defendant was charged with bank robbery, and the court allowed testimony concerning numerous uncharged burglaries. The appellate court affirmed, noting that Rule 404(b) is one of inclusion. "'Unless the evidence of other crimes tends only to prove propensity, it is admissible.'" Id. at 748, *citing* United States v. Jackson, 84 F.3d 1154, 1158-59 (9th Cir. 1996). Here, such evidence demonstrated plan, preparation and intent.

### IV. CONSPIRACY

The government has charged that each of the defendant-examiners agreed with Ina Lee to produce driver's licenses by accepting applications for individuals whom they knew did not meet MVD requirements. The evidence indicates that there was a pre-existing agreement between Lee and the defendant-examiners to accept these applications before she walked in the door February 20, 2004, with her first two clients: Lee knew what she was doing was illegal, and it is highly unlikely that she would take her client's money, promise them licenses, bring them to the MVD window, and then suffer the humiliation of being rejected at the counter. As a practical matter, it is sufficient that the agreement occurred at the MVD window, each time Lee handed in an application without the required supporting documents and that application was accepted and processed by the examiner. On each occasion, Lee's submission of the application constituted a request that a license be illegally produced; the examiner's acceptance and processing of each

-11-

1. application constituted an agreement to produce that license without lawful authority.

It is well settled that an agreement which amounts to a conspiracy need not be formal or express, but may be "a tacit understanding; the agreement may be inherent in and inferred from the circumstances, especially declarations, acts, and conduct" of the conspirators. 16 Am.Jur.2d Conspiracy § 10, Agreement (March, 2008). Typically, an agreement is inferred from the acts of the parties and other circumstantial evidence indicating concert of action for accomplishing a common purpose. United States v. Caplan, 633 F.2d 534 (9th Cir. 1980); United States v. Hopper, 177 F.3d 824 (9th Cir. 1999).

## V. COMPUTER RECORDS AND SUMMARY CHARTS

The government will be introducing Exhibit __, and variants of it, as summary evidence pursuant to FRE 1006. The initial investigation in 2005, revealed that Lee had secured the driver's license provided to the FBI informant, Ms. Chun (#20) by means of a false ITIN. The FBI subpoened a computer run from MVD of all driver's licenses based upon ITINS from 2001 through 2005. Because the fourth and fifth numbers in an ITIN must be between 70 and 80, the FBI immediately identified 34 licenses which were patently false. Agents also secured computer runs by address and other biographical information of the applicants; an analysis of this data revealed another 20 fraudulent licenses. A final computer run, of the internal history of each application, identified the examiner who had initially accepted the application and entered it into the MVD computer base. Since then, each of the defendants have examined the applications and verified their handwriting on each. Through several court orders, the government was able to access IRS data, which revealed these ITINS were fictitious or had been issued to people Stateside. This information is contained in well over a thousand pages of computer data.

Computer printouts are generally admissible as business records under FRE 803(6) if the proper foundational requirements are satisfied. The rule specifically allows such printouts, by providing for admission of data compilation in any form. United States v. Catabran, 836 F.2d 453 (9th Cir. 1988).

Charts summarizing such voluminous information are admissible under FRE 1006. The rule provides that the chart is admissible as evidence if it summarizes voluminous writings which cannot conveniently be examined in court. The underlying documents which support the chart must be admissible, and they must have been available to the opposing party for inspection. Catabran, 836 F.2d at 458; United States v. Woods, 943 F.2d 1048 (9th Cir. 1991).

Here, the government will be authenticating the various MVD computer printouts through the systems analyst, Christine San Nicolas, and the IRS data through IRS program analyst Linda Barnes. Defendants have had this data, as well as the summary chart, for several months, and have had ample time to verify that the summary is accurate.

## VI. INADMISSIBILITY OF EXCULPATORY STATEMENTS BY DEFENDANTS

During the course of this investigation, the defendant MVD examiners have made various statements to FBI special agents Ferguson, Kline, and Klocke concerning their processing of MVD applications for Lee. Only Laserna has admitted issuing licenses he knew were only supported by copies of ITIN letters. The others have insisted they only accepted original ITIN or social security documents, and had no idea Lee's ITIN letters were fraudulent. All of them asserted they were receiving no money or other consideration from Lee. Given that the government will be able to prove they were all knowingly accepting license applications without original supporting documents, or sometimes without any documents at all, their statements on this subject are admissions against interest and admissible under FRE 801(d)(2). Their exculpatory statements to federal agents, however, that they received nothing for doing this, are hearsay, and not admissible. Accordingly, the government will present only what the defendants said about the application process. This court should rule pre-trial that it will not permit any attempts during cross-examination of S/As Ferguson, Kline or Klocke to elicit the defendants' exculpatory statements.

Such statements are hearsay, and inadmissible. Williams v. United States, 512 U.S. 594 (1994); United States v. Oretga, 203 F.3d 675 (9th Cir. 2000). Williams directly considered the

-13-

admissibility of a statement which was part incriminating, and part exculpatory. The Supreme Court ruled that it did not matter that the statements were intermixed: only the incriminating (self-inculpatory) statements were admissible. Defendant would not be allowed to elicit the exculpatory statements through cross examination of the government's witness.

Accordingly, agents can only testify to, and be examined on, those portions of the defendants' statements which were incriminating.

## BRUTON PROBLEMS

The testimony concerning the defendants' statements to some federal agents will necessarily be redacted, as required by Bruton v. United States, 391 U.S. 123 (1968). For example, Laserna admitted to S/A Klocke that he accepted copies of ITINs from Lee, though anyone else who proferred copies was rejected. Laserna said he knew he was not supposed to accept copies of ITIN letters, but that he had asked examiner Mary Garcia, who had told him it was okay to accept copies from Lee. He added that all the other examiners accepted copies from Lee as well.

S/A Klocke could not testify to Laserna's statements about Garcia, because Laserna would not be available for cross-examination by Garcia. United States v. Allen, 425 F.3d 1231 (9th Cir. 2005). Likewise, S/A Klocke could not testify to Laserna's observations of what the other examiners did.

//
//
//
//
//
//
//
//

-14-

The government is attaching hereto the defendants' statements to federal agents, Exhibits 16-35, with the portions highlighted in yellow which the government believes are admissible, in light of the legal principles discussed above.

Respectfully submitted this  5th  day of May, 2008.

                                            LEONARDO M. RAPADAS
                                            United States Attorney
                                            Districts of Guam and NMI

                            By:     /s/ Karon V. Johnson
                                   KARON V. JOHNSON
                                   Assistant U.S. Attorney

-15-